IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

2010 FEB 17 PM 4: 51

MARC HALL                        )
                                 )
    Petitioner,              )
                                 )
v.                               )        CASE NO. CR410-030
                                 )
JOHN McHUGH and MAJOR GENERAL    )
JEFFREY PHILLIPS,                )
                                 )
    Respondents.             )
                                 )

## O R D E R

Before the Court is Petitioner's Motion for a Temporary Restraining Order. (Doc. 2.) Therein, Petitioner asks the Court to enjoin the United States Army from transferring him overseas for a court-martial. The Government has responded in opposition. (Doc. 13.) For the reasons that follow, the Motion is **DENIED**.

## BACKGROUND

Petitioner Marc Hall is a Specialist on active duty in the United States Army and is facing a court-martial for threatening to shoot a number of high-ranking army officials should he be deployed to Iraq. (Doc. 1 at 1.) These alleged threats occurred on multiple occasions and included a threat to "go Fort Hood." (Doc. 13 at 2-3.)

Petitioner's division is currently deployed in Iraq, and the Army intends to transfer Petitioner there for his

court-martial.[1]  (Doc. 1 at 2.)   Petitioner contends that

the purpose of this transfer is to allow for future

violations of his constitutional rights.   (Id.)   As such,

Petitioner asks this Court to block his transfer to Iraq.

(Docs. 1, 2, 3.)   The Government has responded, stating

that the Petitioner's claims are meritless and premature,

and that principles of comity require this Court to

abstain.   (Doc. 13.)

## ANALYSIS

I.   Background Law

To be entitled to a temporary restraining order,

Petitioner must show "(1) a substantial likelihood of

success on the merits; (2) that irreparable injury will be

suffered if the relief is not granted; (3) that the

threatened injury outweighs the harm the relief would

inflict on the non-movant; and (4) that entry of the relief

would serve the public interest."   Schiavo ex rel.

Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir.

2005).   "Controlling precedent is clear that injunctive

---

[1] Despite Petitioner's allegations, court-martials outside
of the United States are far from unprecedented.   See,
e.g., Schick v. Reed, 419 U.S. 256 (1974) (court-martial in
Japan), Day v. Wilson, 247 F.2d 60, 62 (D.C. Cir. 1957)
(court-martial in Korea).   And, even if the court-martial
occurs abroad, it is later reviewable by American civil
courts.   See, e.g., Burns, 346 U.S. at 139-40, Day, 247
F.2d 60.

relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion." Id.

## II. Substantial Likelihood of Success on the Merits

The Petition speculates that several constitutional violations might occur if Petitioner is transferred to Iraq.[2] (Doc. 3 at 9-20.) Without addressing the merits of these specific claims, there is a preliminary issue preventing Petitioner from showing a likelihood of success on the merits. That is, the Court is bound to abstain from intervention based on longstanding precedent.

Over thirty years ago, the Supreme Court announced that, "when a serviceman charged with crimes by military authorities can show no harm other than that attendant to resolution of his case in the military court system, the federal district courts must refrain from intervention, by

---

[2] Petitioner also contends that the Army has violated its own regulations with respect to applicants for conscientious objector status. (Doc. 3 at 20-21.) This contention is meritless. The relevant Army regulation states that "[t]he soldier's submission of a conscientious objector application will not preclude the soldier from deploying with his or her unit." United States Dep't of the Army, Army Regulation 600-43, Conscientious Objection 2-10(c)(1) (2006), available at http://www.apd.army.mil/pdffiles/r600_43.pdf. Plainly, the deployment with his own unit, even if his personal deployment was delayed, does not violate this regulation. Accordingly, the Court will not further address this baseless contention.

way of injunction or otherwise."[3]    Schlesigner v. Councilman, 420 U.S. 738, 759 (1975). As the Supreme Court recently explained

> Councilman identifies two considerations of comity that together favor abstention pending completion of ongoing court-martial proceedings against service personnel. First, military discipline and, therefore, the efficient operation of the Armed Forces are best served if the military justice system acts without regular interference from civilian courts. Second, federal courts should respect the balance that Congress struck between military preparedness and fairness to individual service members when it created an integrated system of military courts and review procedures, a critical element of which is the Court of Military Appeals consisting of civilian judges completely removed from all military influence or persuasion.

Hamdan v. Rumsfeld, 548 U.S. 557, 586 (2006).

Here, both comity considerations suggest abstention. Indeed, this is a case of military discipline over a serviceman, the exact case for which the system of military justice was established. Councilman, 420 U.S. at 759-60. It is axiomatic that if the Court were to prematurely

---

[3] Petitioner contends that Councilman is inapplicable, reasoning that he is complaining of future conduct leading to a certain outcome, rather than complaining of the actual outcome. (Doc. 3 at 7.) This is a distinction without a difference and nothing in Councilman suggests otherwise. As the Supreme Court has consistently explained, the applicability of Councilman abstention turns on whether the military tribunal has personal jurisdiction over the Defendant: if the tribunal lacks this jurisdiction, then civil courts need not abstain. Hamdan v. Rumsfeld, 548 U.S. 557, 585 n.16 (2006), Councilman, 420 U.S. at 760.

4

interfere in the exact type of case for which the military justice system was established, then the Court would be disregarding "the balance that Congress struck between military preparedness and fairness to individual service members" and "the efficient operation of the Armed Forces." Hamdan, 548 U.S. at 586. Accordingly, Councilman abstention is appropriate here.

Petitioner attempts to distinguish his case from other standard military disciplinary actions through speculative allegations of future constitutional violations. (Doc. 3 at 7.) However, "abstention in the face of ongoing court-martial proceedings is justified by [the] expectation that the military court system established by Congress—with its substantial procedural protections and provision for appellate review by independent civilian judges—will vindicate servicemen's constitutional rights." Hamdan, 548 U.S. at 586, see also Councilman, 420 U.S. at 758 ("[I]t must be assumed that the military court system will vindicate servicemen's constitutional rights."). Accordingly, assertions of future constitutional violations by a court-martial do not justify preemptive intervention. Hamdan, 548 U.S. at 586, Councilman, 420 U.S. at 758.

The most likely outcome of this case, then, is Councilman abstention. Accordingly, Mr. Hall's current

5

petition is not likely to succeed. Because the Court finds that Mr. Hall cannot show a substantial likelihood of success on the merits, the Court need not continue.[4] Schiavo, 403 F.3d at 1223 ("Controlling precedent is clear that injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success

---

[4] Although the Court need not decide whether the final three elements suggest injunctive relief, it is clear they do not. First, Petitioner will not suffer irreparable harm other than the normal harms attendant from criminal prosecution. Such harms are not "irreparable in the special legal sense of that term." Councilman, 420 U.S. at 755 (citing Younger v. Harris, 401 U.S. 37, 46 (1971)). Second, intervention in the court-martial process creates serious harm to the non-movant, the military, by disrupting its normal disciplinary system. Hamdan, 548 U.S. at 586. Meanwhile, the injury in this case is speculative at best because it assumes that the military will not vindicate Petitioner's constitution rights. Further, assuming Petitioner is convicted, he will have the opportunity to attack any actual constitutional violations through post-conviction collateral attack. Schlesinger, 420 U.S. at 747 ("Habeas corpus proceedings have been and remain by far the most common form of collateral attack on court-martial judgments."), Burns, 346 U.S. at 139-40, Day v. Wilson, 247 F.2d at 62, United States ex rel. Berry v. Commanding General, Third Corps, Fort Hood Tex., 411 F.2d 822, 824 (5th Cir. 1969), Ackerman v. Zenon, 150 Fed App'x 772, 775 (10th Cir. 2005) (unpublished). Accordingly, the harm to the non-movant outweighs the injury to Petitioner. Finally, Petitioner's assertion that the public's interest is affected because his overseas trial will close his trial to the media is overstated. News media cover many stories abroad, and if his story is as important as he contends, the media will have the opportunity to cover it in Iraq. As Petitioner concedes, the military is not planning on actually excluding members of the press. (Doc. 3 at 12.) Accordingly, none of the other Schiavo factors militate for injunctive relief.

criterion."). Accordingly, the Motion for a Temporary Restraining Order is **DENIED**.

## CONCLUSION

The Court has considered Petitioner's Motion for a Temporary Restraining Order (Doc. 2) and Brief in Support (Doc. 3). For the foregoing reasons that Motion is **DENIED**.

SO ORDERED this _17th_ day of February, 2010.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA